UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Joseph H. Rodriguez |
| v. | : | Criminal No. 14-598 |
| VLADIMIR KLEYMAN | : | OPINION |

This matter is before the Court on its own motion in advance of sentencing to determine the amount of loss attributable to Defendant's conduct under U.S.S.G. § 2B1.1(b)(1), in order to calculate the applicable Guidelines range. The Court invited and considered written submissions from the parties regarding proof of loss and held a hearing on July 29, 2015. For the reasons that follow, the Court does not accept wholesale the Government's loss calculation.

On October 14, 2014, Defendant Pharmacist Vladimir Kleyman pled guilty to a one-count criminal information, which charged a dual object conspiracy from January 2013 through January 2014 to (i) bribe a physician, contrary to 42 U.S.C. § 1320a-7b(b)(2)(A), and (ii) commit health care fraud, contrary to 18 U.S.C. § 1347, all in violation of 18 U.S.C. § 371. Defendant has conceded that he bribed "at least" one physician for referrals of prescriptions for a compounded pain cream. In addition, Defendant admitted he dispensed compounded pain cream to patients whose insurance companies did not cover it by falsely claiming he had dispensed other reimbursable items, such as patches and gels. During his plea colloquy, Defendant also admitted to obtaining payment from Horizon Blue Cross Blue Shield by "misrepresenting the quantity & frequency with which [he]

1

dispensed pain cream" to Horizon insureds. (Tr. of October 14, 2014 Plea Hearing, p. 24.)

The guideline that applies to the charged conspiracy is U.S.S.G. § 2X1.1(a). The base offense level is derived from the base offense level from the guideline for the substantive offense that was the object of the conspiracy (i.e., bribery and healthcare fraud).[1] The guidelines that apply to the substantive offenses that were the objects of the conspiracy are U.S.S.G. § 2B4.1 (bribery) and U.S.S.G. § 2B1.1 (healthcare fraud), which provide for base offense levels of 8 and 6, respectively. When the counts involve offenses of the same general type to which different guidelines apply, the offense guideline that produces the highest offense level is applied. See U.S.S.G. § 3D1.3(b). In this case, the resulting base offense level would be 8. The Government has indicated, however, that under certain conditions, it will move for a 1-point reduction in Defendant's offense level.

Next, the offense level for each of the underlying substantive offenses is determined largely on the basis of the total amount of harm or loss, so the offenses group. See U.S.S.G. § 3D1.2(d). Because the offenses group together

---

[1] Because the Defendant and a co-conspirator completed all the acts they believed necessary on their part for the successful completion of the substantive offense, a 3-level decrease does not apply. See U.S.S.G. § 2X1.1(b)(2). According to the Government, because Defendant abused a position of public and private trust, or used a special skill, in a manner that significantly facilitated the commission of the relevant criminal activity, U.S.S.G. § 3B1.3 applies, resulting in an increase of 2 levels. However, the Government also indicated that the Defendant demonstrated a recognition and affirmative acceptance of personal responsibility for the offense charged. Therefore, a downward adjustment of 2 levels for acceptance of responsibility appears to be appropriate. See U.S.S.G. § 3E1.1(a).

pursuant to U.S.S.G. § 3D1.2(d), the offense level applicable to the group is the offense level corresponding to the aggregated loss. The only issue to which the parties did not stipulate as part of the plea agreement is whether the aggregated loss caused by the dual object conspiracy – comprised of (1) bribery of physician(s) in violation of 42 U.S.C. § 1320a-7b(b)(2)(A) and (2) healthcare fraud contrary to 18 U.S.C. § 1347 – is more or less than $400,000.

The Government's position is that the aggregated loss was more than $400,000, but not more than $1,000,000; therefore, U.S.S.G. § 2B1.1(b)(1)(H) would apply to increase the offense level by 14 to 21. Based on a Criminal History Category of I, the applicable advisory sentencing range would be 37-46 months' imprisonment. Defendant's position is that the aggregated loss caused by the healthcare fraud offense and the value of the bribe was more than $200,000, but not more than $400,000; therefore U.S.S.G. § 2B1.1(b)(1)(G) would apply to increase the offense level by 12 to 19. Based on a Criminal History Category of I, the advisory sentencing range applicable would be 30-37 months' imprisonment.[2]

The Government has the burden of proof by preponderance of evidence with respect to the amount of loss. United States v. Jiminez, 513 F.3d 62, 86 (3d Cir. 2008). In doing so, the Government must show actual harm. United States v. Evans, 155 F.3d 245, 253 (3d Cir. 1998). "[A] proper measurement of actual

---

[2] As of hearing date, the USSG effective November 1, 2014 applied to this case. Amendments to the Guidelines, effective November 1, 2015, yield a 12 level increase for loss between $250,000 and $550,000 with an advisory sentencing range of 30-37 months.

loss must take into account the 'nature and degree of the harm caused by the offense,' and that degree of harm, in turn, depends on the quality of services rendered." Id. (quoting United States v. Maurello, 76 F.3d 1304, 1311-12 (3d Cir. 1996)). See also United States v. Nagle, Nos. 14-3184, 14-3422, -- F.3d --, 2015 WL 5712253 (3d Cir. Sept. 30, 2015) (in calculating loss, face value of fraudulent contracts must be offset by fair market value of services provided under those contracts). The Government must satisfy its burden with "reliable and specific evidence." United States v. Medina, 485 F.3d 1291, 1304 (3d Cir. 2007) (citation omitted).

Probation's presentence investigation determined, through victim impact statements, that the total monetary loss to 39 victim companies was $781,089.93. This number includes $621,893.19 in loss by Horizon Blue Cross Blue Shield. The Government concurs in Probation's loss calculation for a 14-level enhancement. For purposes of determining loss, the Government has divided the criminal misconduct as falling into three categories: (1) bribing a physician to obtain referrals of compounded pain cream prescriptions, which affected claims paid by federal health care programs; (2) defrauding private plans for items that in fact were not dispensed to patients; and (3) defrauding Horizon Blue Cross Blue Shield by making false claims as to the quantity of compounded pain cream dispensed, in order to circumvent a preauthorization requirement designed by Horizon.

4

The parties have agreed that the amount in federal funds that the Defendant received in connection with bribe referrals for compounded pain cream was $ 76,768.[3] In addition, the parties have agreed that Defendant fraudulently billed Medicare, Medicaid, and various private payors for Voltaren gel, Lidoderm patches, and Lidocaine patches but dispensed compounded pain cream to patients, which was not covered. Because the payors did not cover the compounded pain cream, the full amount Defendant charged, $85,390, must be used.

Finally, at the heart of this issue, is the fact that Defendant misrepresented the quantity and frequency with which he dispensed compounded pain cream to at least one physician's patients insured by Horizon by giving patients 30 days' supply at a time but billing insurance for 10 days' supply three times. In doing so, Defendant circumvented Horizon's prior authorization cost-control measure required for a 360 gram/30-day supply. Evidence of this is in a phone conversation instructing the physician to leave the quantity line and refill count blank on his prescriptions. The Defendant also ignored instructions to contact Horizon on 30-day requests, instead re-submitting in 10-day increments. Doing

---

[3] The PSR indicated that Defendant paid $96,634 in kickback money to one physician for prescription referrals, which Probation claimed represented an "improper benefit conferred" – claims paid by the insurers that were "tainted" by the bribes. The Government then originally argued that this amount should be adjusted upward to $784,051.41 because a $2,961.48 loss by Optum Rx was inadvertently omitted from the final Pre-Sentence Report. The parties have since agreed on the figure $76,768.

so allowed Defendant to avoid documentation of medical necessity for dispensing pain cream for more than 10 days. The physician "steered virtually every patient to the [compounded] pain cream as a first-line treatment, instead of first trying commercially available, lower-cost, prescription medication, because Defendant paid [him] to do so. Again, the Defendant's kickbacks were driven by volume – the greater the volume of pain cream prescriptions referred, the higher the bribes that the Defendant paid." (Gov't Sentencing Memo, p. 9; see also Tr. of July 29, 2015 Loss Hearing, Young testimony, p. 75-76.)

Regarding the loss Defendant caused by defrauding Horizon Blue Cross Blue Shield by making false claims as to the quantity of compounded pain cream dispensed in order to circumvent the Horizon preauthorization requirement, the Government argues that the Court should use $621,893, while the defense argues there was no loss. The Court understands Defendant's position: "Kleyman's sole misdeed was to circumvent the billing procedures of Horizon, but that did not yield an actual loss to Horizon." (Defense Sentencing Memo, p. 6.) As part of his plea colloquy, however, Defendant admitted that he fraudulently obtained payment from Horizon by misrepresenting the quantity and frequency of Pain Cream he dispensed:

| | |
|---|---|
| The Court: | Did [your pharmacy] also mislead payors about the quantity of pain cream dispensed and the frequency with which prescriptions were being filled? |
| The Defendant: | Yes, your Honor. |

6

| | |
|---|---|
| The Court: | Were you aware of and did you participate in and otherwise cause these misstatements about items dispensed, quantity, and frequency to be made to payors? |
| The Defendant: | Yes, your Honor. |
| The Court: | When made, did you then know that these misstatements to the payors were false? |
| The Defendant: | Yes, your Honor. |
| The Court: | Was the purpose of these misstatements to payors to deceive the payors into paying [your pharmacy] more money than [your pharmacy] would otherwise have received? |
| The Defendant: | Yes, your Honor. |
| The Court: | Were you also then aware that one or more of other persons knowingly participated in making these false statements to payors for the shared purpose of fraudulently inducing those payors to pay [your pharmacy] more money than [your pharmacy] would otherwise have received? |

\* \* \*

| | |
|---|---|
| The Defendant: | Yes, your Honor. |

\* \* \*

| | |
|---|---|
| The Court: | Alright. Now, on multiple dates between July 2013 and January 2014, did you obtain payment from Horizon Blue Cross Blue Shield by misrepresenting the quantity and frequency with which you had dispensed pain cream to patients of [the physician-at-issue] who then were insured by Horizon? |

\* \* \*

| | |
|---|---|
| The Defendant: | The answer is yes. |

(Tr. of October 14, 2014 Plea Hearing, pp. 23-24.) Accordingly, the Court finds that Defendant has acknowledged that his fraudulent billing activity resulted in

Horizon paying out an amount that it would not have, save for Defendant's misrepresentations.

Upon review of the record, the Court finds that Horizon's own audit found the "total recovery amount due" from Defendant to be $314,555.42 (Defense Sentencing Memo, Ex. A), of which $5,899.76 related to substances other than compounded pain cream. (Tr. of July 29, 2015 Hearing, Ex. D-3.) The Government has argued that the Horizon audit was not an exhaustive review of all claims, but an on-site audit of Defendant's pharmacy that reviewed only a sampling of claims. (Government's Sentencing Memo, n.14.) The Government further argues that its figures "reflect[] a review of *every* pain cream claim that [Defendant's pharmacy] filed, pursuant to a prescription from [the physician-at-issue] for the time period between July 1, 2013 to January 9, 2014." (Id. (emphasis added); see also Tr. of July 29, 2015 Hearing, Young Testimony, p. 25.) The Government next asserts that Defendant was aware that "legitimate pre-authorizations were unobtainable" because any belief by Defendant that the extended term of pain cream was medically necessary "defies common sense." (Government's Sentencing Memo, p. 10.) The Government has not proved, however, by a preponderance of the evidence that *all* of the prescriptions for pain cream written by the physician-at-issue were not medically necessary and therefore *none* of the claims for pain cream would have been paid by Horizon.

To the extent that Defendant's activity harmed Horizon, "[his] sentence should be augmented." Evans, 155 F.3d at 253. "However, to the extent that any

claims were legitimate and insurance companies were properly obligated to pay them, there was no harm, and [the] sentence should not be augmented" Id. Even though Horizon implemented a practice whereby it would not be required to pay claims for a 360 gram/30-day supply of pain cream, this is not sufficient to establish a loss to Horizon. See Medina, 485 F.3d at 1304 (even where witness established that Medicare would not pay a claim if it knew parties were receiving kickbacks, the Government still had the burden of proving loss, and failed to do so in the absence of evidence that those prescriptions were not medically necessary or were not delivered to patients). Horizon quantified the amount of harm Defendant caused through his scheme as $314,555.42; the Court will use this figure in calculating the applicable guideline range.

In conclusion, therefore, the Court finds that a reasonable estimate of the amount of loss is $476,713.42, the sum of $76,768, $85,390, and $314,555.42. This is in keeping with the Court's reading of the Circuit's decisions in Medina and Nagle regarding calculating actual harm from a preponderance of the proofs presented. The Guidelines effective November 1, 2015 yield a 12 level increase for loss between $250,000 and $550,000 with an advisory sentencing range of 30-37 months' imprisonment.

Dated:    November 4, 2015

_____
Joseph H. Rodriguez
U.S.D.J.

9